Filed 2/15/24  P. v. Johnson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PAUL WAYNE JOHNSON, JR.,<br><br>        Defendant and Appellant. | A166959<br><br>(Contra Costa County<br>Super. Ct. No. 04002002202) |

Defendant Paul Johnson pled guilty to two counts of lewd or lascivious acts against a child under 14 years old and was sentenced to six years in prison.  He appeals from a trial court order awarding $10,000 in restitution to the victim for noneconomic losses.  We agree with Johnson that insufficient evidence supports the restitution award, and we therefore reverse and remand for further proceedings on the issue of noneconomic restitution.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Johnson and his co-defendant, Joseph Duncan, were charged with several felonies based on an incident involving two minors, 12-year-old Jane

1

Doe 1 and 16-year-old Jane Doe 2.[1]  At the preliminary hearing, two police officers testified about their interviews of the girls, who did not testify or provide any direct statements below.[2]  The underlying facts are taken from the officers' preliminary-hearing testimony.

Doe 1 and Doe 2 lived in the same group home.  On the night of August 29, 2020, the girls left the home and walked to an Antioch gas station.  There, they encountered two men they did not know, 31-year-old Johnson and 45-year-old Duncan.  Eventually, Duncan drove the group to his Antioch house.

According to Doe 1, when they got to Duncan's house, Johnson and Duncan "offered her what she believed was crystal methamphetamine and an oxy pill."  When she declined, Johnson pulled out a black handgun and held it to her head, forcing her to take the drugs.  Johnson put his penis in her mouth and then in her vagina while Duncan held a gun to her head.  Johnson then took the gun while Duncan put his penis in her mouth and vagina.  Duncan also inserted a finger in her anus.  When she was interviewed two days later, Doe 1 reported that "she had a lot of pain in her vagina" and the pain was a 9 on a scale of 1 to 10.

Doe 1 also claimed that she later saw both men "licking [Doe 2's] vagina."  In addition, the two girls orally copulated each other.  Doe 1 indicated that she and Doe 2 eventually fell asleep, and Duncan woke them up the next morning and drove them back to the same gas station.

---

[1] None of the charging documents are in the record before us.  Duncan abandoned his appeal from the victim restitution award against him, and we do not discuss him further except with regard to the facts of the offenses.

[2] Johnson stipulated that the preliminary hearing provided a factual basis for his plea.

Doe 2 gave the police a significantly different version of events.  Doe 2 claimed that Doe 1 voluntarily took drugs, and Doe 2 denied ever seeing a gun at Duncan's house even though Doe 1 stated that Doe 2 was present when the men pointed a gun at Doe 1's head.  Doe 2 reported that "she was trying not to leave . . . Doe 1 alone" with the men but eventually went outside to have a cigarette.  When Doe 2 came back in, Doe 1 was not wearing pants or underwear.  Doe 1 told Doe 2 that both men had ejaculated in her and orally copulated her.  According to Doe 2, Doe 1 appeared to be "okay with having sex."

Doe 2 stated that Duncan then got her to go into another room with him so that Johnson and Doe 1 "could be alone."  While there, Duncan inserted his fingers into Doe 2's vagina.  Doe 2 agreed that she and Doe 1 orally copulated each other at some point, although she said that Doe 1 also "asked to suck . . . Duncan's penis."  Doe 2 denied, however, that either man had orally copulated her, as Doe 1 claimed they had.  Doe 2 said the two girls stayed at the house until about 9:00 a.m. the following morning, at which point Duncan dropped them off at the gas station.

Johnson was later arrested, and a rifle and a black Beretta handgun were recovered during a search of his house.  He admitted to the police that on the night in question, he was with Duncan and they met two girls.  Initially, Johnson claimed that after the group left the gas station, Duncan dropped him off before going somewhere else with the girls.  Eventually, Johnson stated that he went to Duncan's house and was alone with Doe 1 at one point, but he admitted only that Doe 1 "pulled out his penis and was about to give him a blowjob" when Doe 2 interrupted them, "which stopped him from getting a blowjob."

3

Under a plea agreement, Johnson pled guilty to two counts of lewd or lascivious acts against a child under 14 years old, Doe 1.[3]  In exchange, the remaining charges were dismissed.  In September 2022, Johnson was sentenced to the agreed-upon term of six years in prison, composed of the midterm of six years on one count and a concurrent midterm of six years on the other count.

The People sought noneconomic restitution from Johnson to Doe 1 in the amount of $50,000 per count, for a total of $100,000.  In support of the request, no victim impact statement or other similar evidence from Doe 1 was offered.  Rather, the People relied solely on evidence that sexually abused children as a group experience negative psychological effects.  Johnson opposed the request, claiming the prosecution should be required to submit evidence that Doe 1 "has suffered from particularized trauma as a result of [his] conduct," not just "social science research about psychological impact on victims of sexual abuse generally."

At the November 2022 restitution hearing, the trial court observed that it had not "seen or heard [anything] directly from [Doe 1] about the psychological, physical[,] or other impact of [the crimes] on her."  The court stated, "[I]n other cases where I've awarded substantially more in noneconomic damages, I've heard the victim testify, I've received victim impact statements and have other information about the actual medical expenses that might have been incurred that are reflective of injuries or mental health trauma."  Here, however, the court had "nothing" justifying "consideration of a larger amount, other than sort of a basic minimum amount that might be awarded, in a case such as this," because there was "an

_____

[3] The convictions were under Penal Code section 288, subdivision (a).  All further statutory references are to the Penal Code unless otherwise noted.

4

absence of any information, more or less, except for the crimes that have been pleaded to." While the court ultimately decided that "it must be the case that . . . the offenses that were pleaded to, and the circumstances as I understand them, would have resulted in both physical and mental trauma to . . . [Doe 1]," it limited noneconomic restitution to $10,000, a "nominal" amount.

## II.
### DISCUSSION

Johnson argues that the order awarding noneconomic restitution to Doe 1 lacks a sufficient factual basis. We agree.

Trial courts are required to award full restitution " ' "in every case . . . in which a crime victim suffers a loss." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 655 (*Giordano*); § 1202.4, subd. (f).) "[T]ypically, '[a] restitution order reimburses [a crime victim] only for economic losses.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1181 (*Valenti*).) Under section 1202.4, subdivision (f)(3)(F), however, courts must order restitution to reimburse victims for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7." There is no dispute that this statute applies here because Johnson was convicted under section 288.

We review a restitution order for an abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663; *People v. Gomez* (2023) 97 Cal.App.5th 111, 116 (*Gomez*).) Under this standard, " ' "[n]o abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." ' " (*Gomez*, at p. 116.) Although our review is " 'deferential,' . . . it 'is not empty.' " (*Giordano*, at p. 663.) "[A] restitution order 'resting upon a " 'demonstrable error of law' " constitutes an abuse of the court's discretion.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) In addition, a restitution order cannot stand unless there is " ' " 'substantial evidence, contradicted or

5

uncontradicted,' to support the trial court's findings." ' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045; *People v. Lehman* (2016) 247 Cal.App.4th 795, 804; *Millard*, at p. 26.)

"Section 1202.4 does not provide guidelines for evaluating a child victim's noneconomic damages for sexual abuse.  Unlike economic damages, which encompass 'objectively verifiable monetary losses' (Civ. Code, § 1431.2, subd. (b)(1)), noneconomic damages compensate the victim for 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, [and] emotional distress . . . .' (Civ. Code, § 1431.2, subd. (b)(2).)" (*Valenti*, *supra*, 243 Cal.App.4th at p. 1182; *Gomez*, *supra*, 97 Cal.App.5th at p. 115.)  The party seeking restitution has the burden of proof by a preponderance of the evidence, but "section 1202.4 does not require any particular kind of proof to establish a victim's losses." (*People v. Lehman*, *supra*, 247 Cal.App.4th at p. 803.)  The "evidentiary bar" for demonstrating entitlement to noneconomic damages "is a low one," and "the prosecution [is] not required to present victim testimony or affidavits or expert declarations in connection with the restitution hearing." (*Gomez*, at pp. 119–120; *Lehman*, at p. 803.)

But as Division Five of this court recently held, even though the evidentiary bar for proving entitlement to noneconomic damages is low, "some evidence of the harm incurred by the *particular victim* of the crime is required to support a victim restitution award. . . .  [I]t is insufficient that the *average victim* would suffer injury from a particular type of crime, or that *generally* victims of such crimes suffer injury." (*Gomez, supra*, 97 Cal.App.5th at p. 118.)  Although the trial court did not have the benefit of *Gomez* at the time it awarded restitution, its assumption that Doe 1 "must have" experienced physical and mental trauma by virtue of Johnson's

offenses runs afoul of that decision. Thus, we cannot agree with the Attorney General that the court "acted well within its discretion in concluding that the [psychological research] studies constituted evidence that Doe 1 suffered at least nominal psychological damage."

The Attorney General also claims that evidence from the preliminary hearing supports the trial court's determination "that Doe 1 suffered compensable psychological harm." He points to evidence that "Doe 1 acted so hysterically upon meeting with police that she had to be restrained and hospitalized" under Welfare and Institutions Code section 5150. Specifically, a police officer testified that at around 4:00 p.m. on the afternoon after the crimes, he was dispatched to the gas station where Doe 1 and Doe 2 still were. He learned the girls "were considered runaways from the group home" and transported them there. Although the officer could not recall what Doe 1's demeanor was when he "very first contacted her," upon pulling up to the group home Doe 1 became "upset and hysterical in the back of the patrol car, and then she was placed on a 5150 and was placed in soft restraints on a gurney." The officer could not remember whether Doe 1 said anything indicating why she was upset, and when she was placed in the ambulance, she stated only that "she had been forced at gunpoint to ingest drugs." In fact, Doe 1 did not mention "any sexual behavior at all" until later, at the hospital.

We agree with Johnson that this does not constitute substantial evidence that Doe 1 was upset because of the crimes at issue. The police officer did not make contact with her until several hours after Duncan left her at the gas station, and Doe 1 apparently did not become upset until she got to the group home. Nor did she mention sexual activity or say anything else indicating that her being upset and hysterical was because she had been

7

sexually abused.[4]  In any case, the trial court gave no indication that it relied on this evidence of Doe 1's psychological distress in awarding noneconomic restitution.

The Attorney General also relies on Doe 1's report of severe pain in her vagina.[5]  Although the prosecutor also mentioned this evidence at the restitution hearing, and pain and suffering are clearly legitimate noneconomic losses, there is no indication in the record that the trial court relied on it either.  Rather, the court's statements as a whole convey that it believed a "nominal" amount of restitution was appropriate based solely on the crimes committed against Doe 1, but that it was unwilling to award any more because of the lack of evidence of the specific impact on her.  This constituted an abuse of discretion under *Gomez*, regardless of whether there was substantial evidence that might otherwise justify the award.

*Gomez* emphasized, and we do as well, that requiring evidence of a crime's impact on the particular victim "does not necessarily obligate the victim to present testimony or a statement about the impact, something prosecutors and trial courts may be reluctant to require, particularly when the victim is still a minor." (*Gomez*, *supra*, 97 Cal.App.5th at pp. 119–120.)

---

[4] Johnson entered a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 that permitted the trial court to consider facts underlying the dismissed counts in ruling on restitution.  Although this theoretically could have allowed the court to award noneconomic restitution based on evidence that Doe 1 was in distress because Johnson forced her to take drugs at gunpoint, our record does not reflect whether any of the charges were based on such conduct.

[5] Doe 1's statement to police that her doctor told her "there [were] some abrasions on her vagina as well as lacerations on her anus," which the Attorney General also cites, was not admitted for the truth of the matter stated.  Thus, we agree with Johnson that it does not constitute evidence of noneconomic loss.

We recognize that Doe 1, a foster child living in a group home, was an especially vulnerable victim.  It is wholly understandable that, as the prosecutor represented, Doe 1 "was not able to, dealing with what she's going through right now, . . . give [an] impact statement."  But as the trial court aptly responded, the prosecutor's office could have presented other evidence of the crimes' impact on Doe 1, such as "the efforts to have [her] . . . cooperate in the process of a determination of noneconomic damages" and her reluctance or inability to do so.

As Johnson agrees, the appropriate remedy after reversing a restitution order—including on the basis that the order lacks sufficient evidence—is a remand for a new restitution hearing.  (*People v. Harvest* (2000) 84 Cal.App.4th 641, 649 [victim restitution does not constitute punishment for double jeopardy purposes]; see, e.g., *Gomez*, *supra*, 97 Cal.App.5th at p. 120; *Valenti*, *supra*, 243 Cal.App.4th at pp. 1183–1184.)  Therefore, on remand the People may again seek noneconomic restitution against Johnson on Doe 1's behalf.

III.
DISPOSITION

The December 2, 2022 order awarding $10,000 in restitution from Johnson to Doe 1 is reversed.  The matter is remanded for further proceedings on whether Johnson owes noneconomic restitution to Doe 1.

_____

Humes, P. J.


WE CONCUR:


_____

Banke, J.


_____

Castro, J.*


\*Judge of the Superior Court of the County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*People v. Johnson*  A166959

10